## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**MARICHEL PIERCE CLAYBURN,**

      Petitioner,

v.                                                      Civil Action No. **3:18CV555**

**HAROLD W. CLARKE,**

      Respondent.

### REPORT AND RECOMMENDATION

Mirachel Pierce Clayburn, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 (ECF No. 1).[1] Clayburn challenges his convictions in the Circuit Court of the City of Richmond ("Circuit Court") of the murder of Toren Waller and the use of a firearm in the commission of that murder. This matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Respondent has moved to dismiss. (ECF No. 22.) For the reasons set forth below, it is RECOMMENDED that the Motion to Dismiss be GRANTED.

**A.      Clayburn's Claims**

Clayburn demands relief upon the following grounds:

Claim One:      The evidence was insufficient to prove that Clayburn was the person who shot Toren Waller. (ECF 1–1, at 6.)

Claim Two:      "The trial court err[ed] by overruling counsel's objection and denying counsel's motion for a mistrial where the evidence clearly showed that the Commonwealth violated the trial court's ruling with regard to Clayburn's Motion in Limine." (*Id.* at 10.)

---

[1] The Court corrects the capitalization, punctuation, and spelling in the quotations from Clayburn's submissions. The Court employs the pagination assigned to the 28 U.S.C. § 2254 Petition by the CM/ECF docketing system.

Claim Three:   "Trial counsel was ineffective when he failed to object to [the] improper jury poll. Only eleven jurors w[ere] polled for verdict of conviction." (*Id.* at 14.)

Claim Four:   "Trial counsel was ineffective when he failed to conduct [a] voice line-up, being the key witness identification was solely on voice." (*Id.* at 16.)

Claim Five   Trial counsel was ineffective when he failed to investigate an insanity defense. (*Id.* at 19.)

For the reasons discussed below, it is RECOMMENDED that Claim Two be DISMISSED because it fails to state a basis for federal habeas relief and that the remaining claims be DISMISSED for lack of merit.

**B.    Applicable Constraints Upon Federal Habeas Review**

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus. *See Harrington v. Richter*, 562 U.S. 86, 101–03 (2011). Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination

2

was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

In Claim Two, Clayburn identifies no constitutional violation but instead challenges the Circuit Court's determination of state law. The Circuit Court's alleged error provides no basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (citing cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"). Accordingly, it is RECOMMENDED that Claim Two be DISMISSED.

**C.     Sufficiency of the Evidence**

In Claim One, Clayburn contends that insufficient evidence existed to demonstrate that he was the individual who shot and killed Tarren Waller. A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

The record reflects that in October of 2013, Shailee Tschakert was living in an apartment in Richmond, Virginia with: her boyfriend, Saul Crow; her mother, Andrea Tschakert; and her

3

mother's boyfriend, Mirachel Clayburn.[2] (May 1, 2014 Tr. 179–80, 185–86, 212–13.) On the night of October 5, 2013, Shailee, Saul, Darrell Harris, Andrea, and Toren Waller were drinking and smoking at the Tschakert's apartment, when Toren invited over a carload of his friends. (May 1, 2014 Tr. 183; *see* May 1, 2014 Tr. at 118–20.)[3]

Shortly after Toren's friends arrived, Toren and Saul got into a fight. (May 1, 2014 Tr. 119–20, 184.) Andrea attempted to break up the fight. (May 1, 2014 Tr. 121–22.) Toren twice punched Andrea in the face as she attempted to break up the fight. (May 1, 2014 Tr. 122, 138–39.) Andrea became irate and said "'I'm going to call Outlaw,' you know what I mean? 'Outlaw is going to dead this nigga . . . . You gonna be a memory . . . .'" (May 1, 2014 Tr. 122–23.) Andrea then called Clayburn, relayed what had happened, and said "to come around here . . . ." (May 1, 2014 Tr. 140, 227.)

During the course of the fight, Toren's friends stole some cell phones belonging to the residents of the apartment. (May 1, 2014 Tr. 136, 184.) Saul and Shailee went to look for Toren and his friends. (May 1, 2014 Tr. 184–86.) Saul and Shailee found Toren and Darrell. (May 1, 2014 Tr. 125, 186.) After some discussion, Toren agreed to get the cell phones back to the rightful owners. (May 1, 2014 Tr. 125.) Then, two men, whose faces were masked with bandanas came from a cut in the apartments and began shooting at Toren. (May 1, 2014 Tr. 126–27.) Darrell saw Toren get hit about five times. (May 1, 2014 Tr. 127.)

The taller of the shooters then came up to Toren's prone body and shot Toren again in the head. (May 1, 2014 Tr. 188.) After that, the taller shooter said, "Run B., run." (May 1, 2014 Tr. 189.) Shailee recognized the voice as that of her mother's boyfriend, Clayburn. (May 1, 2014

---

[2] Clayburn is also known as Outlaw. (May 1, 2014 Tr. 229, 231.) Some of Shailee's siblings also lived in the apartment.

[3] In the trial, Darrell refers to Andrea as Angela. (May 1, 2014 Tr. 119.)

Tr. 189.) Shailee also recognized that in addition to his voice, the tall shooter's cornrows and body type were very similar to Clayburn. (May 1, 2014 Tr. 189–90.)  Shailee, who was close behind the tall shooter, said, "'Outlaw, that better not be you.' And it was like he almost wanted to pause or hesitate or something[,] but he didn't and just kept running." (May 1, 2014 Tr. 191.)

Additionally, the prosecution presented evidence regarding Andrea's and Clayburn's cell phones from the night of the murder. (May 1, 2014 Tr. 244.)  Those records reflect nine calls between Andrea and Clayburn between October 5, 2013 at 10:36 p.m. and October 6, 2013 at 1:15 a.m. (May 1, 2014 Tr. 270.)  Those records revealed Clayburn's phone steadily approaching the location where the murder happened at around the time the murder happened. (May 1, 2014 Tr. 267–70.)

Considered in the light most favorable to the prosecution, the foregoing evidence is more than sufficient to identify Clayburn as the man who shot Toren Waller.  Accordingly, it is RECOMMENDED that Claim One be DISMISSED.

## D.     Alleged Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694.  In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### 1.   Failure to Challenge the Poll of the Jury

In Claim Three, Clayburn faults counsel for failing to object to an improper poll of the jury. Specifically, Clayburn contends that counsel should have move for a mistrial when only 11 of the 12 jury members were polled about the guilty verdict.  Clayburn raised this same claim on state habeas, and the Circuit Court concluded that "Clayburn cannot demonstrate prejudice from his counsel not objecting to the jury poll." (ECF No. 24–2, at 5.)  Specifically, the Circuit Court observed:

> Following the guilty verdicts, the jury was polled. (Trial Tr. 339–40).  The record shows that the clerk mistakenly left out one of the jurors during the poll. (Tr. 339–40).  However, during the sentencing phase, the jury was polled again. (Tr. 362–63).  The clerk polled all 12 jurors, and each, including the juror that had not been polled earlier, confirmed a unanimous verdict of life in prison.  (Tr. 362–63). Because Clayburn has not presented any evidence that the verdict was not unanimous, he has not shown a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

(*Id.* at 5–6.)  Moreover, in instructing the jury during the guilt phase, the Circuit Court specifically instructed jurors that any verdict "must be the unanimous decision of all of you." (May 1, 2014 Tr. 298.)  Given these circumstances, any objection by counsel would simply have resulted in a further inquiry revealing the verdict was unanimous.  Thus, the Circuit Court reasonably concluded that Clayburn could not demonstrate prejudice.  *See* 28 U.S.C. § 2254(d)(1)–(2).  Accordingly, it is RECOMMENDED that Claim Three be DISMISSED.

## 2.    Failure to Conduct "Voice Lineup"

In Claim Four, Clayburn faults counsel for failing to require Shailee Tschakert to undergo a "voice lineup" and demonstrate that she could identify him based on his voice. (ECF No. 1–1, at 16.) In rejecting this claim, the Circuit Court found that Clayburn failed to demonstrate either deficiency or prejudice. (ECF No. 24–2, at 6.)  The Circuit Court noted that:

> First, there is no procedure in Virginia in which a defense attorney could compel a witness to submit to a "voice lineup." Thus, "professional norms" do not dictate that counsel had to seek a "voice lineup" for the witness. *Strickland*, 466 U.S. at 690. Second, defense counsel's cross-examination of Ms. Tschakert's [sic] shows a clear strategy to impeach her with evidence of her biases against the defendant and her inconsistent statements to the police. (Tr. 195–208). Counsel's actions fell well "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987) ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."). Finally, Clayburn's allegation that a "voice lineup" would have changed the outcome of his trial is too speculative to show that counsel's performance was deficient. *See Palmer v. McDonough*, No. 3:04CV1305-12HTS, 2006 U.S. Dist. LEXIS 31790, at *8 (M.D. Fla. May 19, 2006) (rejecting petitioner's claim as too speculative where he claimed that the victims would not have identified him in a voice lineup); *Goodrum v. Quarterman*, No. G-04-729, 2006 U.S. Dist. LEXIS 65453, at *11 (S.D. Tex. Aug. 31, 2006) (rejecting petitioner's argument that "had defense counsel obtained a voice comparison, the victim would not have been able to identify him as the assailant . . . [as] too speculative to support a claim of ineffective assistance of counsel"); *Baker v. Pliler*, No. C 02-5210 VRW (PR), 2004 U.S. Dist. LEXIS 22035, at *34–*36 (N.D. Cal. Oct. 5, 2004) (rejecting the same claim as conclusory). Accordingly, Clayburn has not demonstrated a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

(ECF No.  24–2, at 6–7.)  The Court discerns no unreasonable application of the law and no unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)–(2). Given that the resolution of Clayburn's claim of ineffective assistance of counsel is highly dependent on Virginia law, Clayburn fails to demonstrate deficiency or prejudice. *Richardson v. Branker*, 668 F.3d 128, 141 (4th Cir. 2012) ("When a claim of ineffective assistance of counsel raised in a habeas corpus petition involves an issue unique to state law, . . . a federal court should be especially deferential

to a state post-conviction court's interpretation of its own state's law."). Accordingly, it is

RECOMMENDED that Claim Four be DISMISSED.

### 3.    Failure to Investigate an Insanity Defense

In Claim Five, Clayburn faults counsel for failing to investigate and pursue an insanity

defense. The Circuit Court found that Clayburn could not demonstrate deficiency or prejudice.

(ECF No. 24–2, at 8.) In reaching that conclusion, the Circuit Court found:

> The United States Supreme Court has recognized that not every case calls for the investigation into a defendant's mental state, as our legal system "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). In Clayburn's case, defense counsel pursued a defense that Clayburn was not one of the two shooters who ambushed and shot the victim multiple times. Counsel reasonably could have determined that this defense held more promise than a theory of insanity, and that any theory of insanity would undermine the theory that Clayburn did not commit the shooting. *See Turk v. White*, 116 F.3d 1264, 1266–67 (9th Cir. 1997) (counsel not ineffective in electing to pursue a defense of self-defense over an insanity defense; "[p]ursuit of these conflicting theories would have confused the jury and undermined whatever chance [the defendant] had of an acquittal"). Given the circumstances of the case, Clayburn has not demonstrated that his "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Richter*, 562 U.S. at 106 (effective counsel is not limited to any one technique or approach); *Williams*, 816 F.2d at 950 ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another.").
>    Furthermore, Clayburn has not established any likelihood of success at trial with an insanity defense. *See Knowles*, 556 U.S. at 127–28 (holding that a failure to present an insanity defense does not constitute ineffective assistance when it was "highly improbable" that a jury would have believed it). In order to assert an insanity defense, the defendant has the burden "to prove to the satisfaction of the jury" that he or she was insane at the time of the offense. *Thompson v. Commonwealth*, 193 Va. 704, 711, 70 S.E.2d 284, 288 (1952). Clayburn alleges that his "mental health illness altered his thinking and behavior . . . at the time of offense." (Pet. at 23). This allegation falls short of proffering, much less establishing an insanity defense. *See Price v. Commonwealth*, 228 Va. 452, 459, 323 S.E.2d 106, 110 (1984) (In Virginia, an insanity defense requires the accused to establish that he or she did not know the difference between right and wrong, or that he or she did not understand the nature and consequences of the acts in question). Thus, Clayburn has failed to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland*, 466 U.S. at 694.

(*Id.* at 8–9 (alterations in original).) The Court discerns no unreasonable application of the law and no unreasonable determination of the facts or law in the Circuit Court's rejection of this claim. *See* 28 U.S.C. § 2254(d)(1)–(2). Indeed, Clayburn's actions in wearing a bandana to mask his identity and fleeing the scene after the shooting are hardly consistent with an individual who could not tell right from wrong. Accordingly, it is RECOMMENDED that Claim Five be DISMISSED.

## F.    Conclusion

It is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 22) be GRANTED, Clayburn's claims be DISMISSED, the § 2254 Petition be DENIED, and the action be DISMISSED. It is further RECOMMENDED that a certificate of appealability be DENIED.

Clayburn is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Clayburn and counsel for Respondent.

It is so ORDERED.

/s/

Roderick C. Young
United States Magistrate Judge

Date: May **30**, 2019
Richmond, Virginia

9